**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**UNO MAS, INC.**
***individually and on behalf***
***of all others similarly situated*** **PLAINTIFF**

**v.** **CAUSE NO. 3:26-cv-00123-JDM-JMV**

**RUAN TRANSPORT CORPORATION** **DEFENDANT**

**ORDER GRANTING IN PART**
**AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS**

The question before the Court is whether Alcohol Beverage Control permittees can sue the private company that runs ABC's warehouse for not timely delivering alcohol orders.

Uno Mas is an ABC permittee that owns a Mexican restaurant in Oxford, Mississippi. Like all Mississippi restaurants and liquor stores, it must purchase alcohol wholesale from ABC. ABC is a division of the Mississippi Department of Revenue. And by Legislative directive, the MDOR contracted with Ruan Transport Corporation, an Iowa-based company, to process and deliver wholesale alcohol orders.

Uno Mas claims that, in early 2026, Ruan botched an update to its warehouse management software. This led to a significant backlog of purchased but yet to be delivered alcohol—to the tune of more than 200,000 cases. Significant business losses and disruptions resulted for Mississippi restaurants and liquor stores, including Uno Mas. And now Uno Mas has brought a class-action lawsuit against Ruan. It seeks to recover under both contract and tort-based theories.

Ruan has responded with a motion to dismiss for failure to state a claim. It asserts it has no contract or direct business dealings with any liquor retailers. So it owed Uno Mas *no duty*—either in contract or tort—in how it operated ABC's warehouse. Thus, it reasons it cannot be sued for alleged warehouse disruptions. The Court disagrees.

While Uno Mas was not a party to Ruan's contract with the MDOR, the Court finds Uno Mas plausibly states a claim as a third-party beneficiary. From the face of the contract, ABC "permittees" are a specified class that directly benefit from the contract—a contract entered into to ensure the timely delivery of wholesale alcohol orders. Indeed, the contract appears to obligate Ruan to "guarantee next workday delivery" of qualified wholesale alcohol orders "to permittees" like Uno Mas. Because Uno Mas's breach-of-contract claim springs from the contract's terms, its third-party beneficiary claim may proceed. So can its equitable unjust-enrichment claim, which Uno Mas alleges in the alternative to its breach-of-contract claim.

That said, this Court agrees with Ruan there is no legal support for Uno Mas's claim that Ruan owed it and other ABC permittees a common-law duty to operate the warehouse in a professional and reliable manner. Therefore, Uno Mas's negligence-based claims fail as a matter of law.

The Court **GRANTS in part** and **DENIES in part** Ruan's Motion to Dismiss. [5] Specifically, Uno Mas's breach-of-contract and unjust-enrichment claims survive. But the negligence and gross negligence claims are dismissed for failure to state a claim.

**Class Action Complaint**

As a so-called "control state," Mississippi acts as the sole wholesaler for distilled spirits and wine. That means, by law, licensed permittees can only buy alcohol for resale through ABC. And ABC operates only one warehouse that services the entire state. According to the complaint, in 2022, the Mississippi Legislature took action to address longstanding distribution problems. It passed a bill that directed the MDOR to contract with a third-party operator to run the ABC warehouse.

Ruan won the contract, a copy of which was attached to the complaint. And Ruan began operating the warehouse in June 2023. Under the contract, Ruan collects a per-case fee ranging from $2.22 to $2.64. In exchange, Ruan "agree[d] to be responsible for the administrative management of the warehousing, order processing, and truck loading functions including, without limitations, the management of its warehouse personnel." And Ruan expressly committed to "guarantee next workday delivery to permittees" for qualified orders entered by the daily cut-off time.

In early 2026, the ABC warehouse underwent a planned shutdown for annual inventory. During this time, Ruan implemented a new software management system. But the new software was incompatible with the warehouse's existing conveyor belt system used to load the delivery trucks. So Ruan removed three of the four conveyor belts from service. And the software contractor responsible for providing support for the conveyor belt system ceased providing those services. With no backup plan, Ruan had to revert to using the "dramatically slower manual picket and pallet system for loading trucks." This led to "a massive and ongoing reduction in the warehouse's throughput capacity."

By the end of February 2026, the warehouse had accumulated a backlog of more than 200,000 unshipped cases of wine and spirits. In response, a legislative hearing ensued, during which testimony was given that the warehouse problems would not be resolved until May 2026.

On May 19, 2026, Uno Mas filed a class action complaint in this Court. It invoked diversity jurisdiction over the Mississippi businesses' claims against the out-of-state Ruan. *See* 28 U.S.C. § 1332(a)(1). The class Uno Mas seeks to represent is "[a]ll licensed ABC permittees in the State of Mississippi who purchased or attempted to purchase alcoholic beverages through the ABC warehouse operated by [Ruan] during the period from December 20, 2025 through May 1, 2026."

According to the complaint, all class members were negatively impacted by the warehouse disruptions. Their damages included lost revenue, lost profits, diminished inventory, and reputational harm.

The class-action complaint brings four claims, all based on Mississippi law.

First, Uno Mas asserts a breach-of-contract claim. The restaurant argues it is a third-party beneficiary to the warehouse-operations contract between the MDOR and Ruan. Among other accusations, Uno Mas claims Ruan failed to perform its obligation to manage the warehouse and process orders and failed to guarantee next workday delivery. And Ruan's breach caused Uno Mas and other class members to suffer lost revenue from their inability to sell already paid for but undelivered products. They also suffered loss of business goodwill.

Second, Uno Mas brings a negligence claim. It alleges that Ruan, "[a]s the sole operator of the ABC warehouse, . . . owed a duty to operate the warehouse in a competent, professional, and reliable manner." And Ruan breached that duty when it implemented the new software system—a system that was not compatible with the conveyor belts. Uno Mas relies on these same allegations in bringing its third claim of gross negligence.

Finally, "in the event this Court determines [Uno Mas] and Class members are not intended third-party beneficiaries" to the warehouse operations contract, Uno Mas alternatively asserts the quasi-contract theory of unjust enrichment. Uno Mas alleges part of the wholesale purchase price it paid the MDOR went to Ruan as its per-case fee. And Ruan unjustly retained the benefit of this fee even though it failed to deliver the alcohol Uno Mas and class members ordered.

**Motion to Dismiss**

Invoking Federal Rule of Civil Procedure 12(b)(6), Ruan asks this Court to dismiss all four claims. Ruan asserts Uno Mas has manufactured a lawsuit against *it* because Uno Mas likely

cannot sue the actual wholesaler—the State of Mississippi—based on statutory bars. According to Ruan, it has no contract or other direct business dealings with Uno Mas or any other liquor retailer. So it cannot be sued—either in contract or in tort—for alleged mismanagement of the ABC warehouse.

To survive a Rule 12(b)(6) motion to dismiss, Uno Mas's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Applying this standard, the Court finds that Uno Mas's contract and equity claims survive, while its tort claims do not.

## I. Breach-of-Contract Claim

Starting with Uno Mas's breach-of-contract claim, the Court finds the complaint plausibly states a third-party beneficiary claim.

### *A. Under the warehouse contract, ABC permittees are a specified class of intended beneficiaries.*

"That a third party may recover directly on a contract made expressly for [its] benefit is not an open question in [Mississippi]." *Yazoo & M.V.R. Co. v. Sideboard*, 161 Miss. 4, 133 So. 669, 671 (1931) (citing *Canada v. Yazoo & M. V. R. Co.*, 101 Miss. 274, 57 So. 913 (1912)). "The difficulty is to determine when a particular case comes within the rule." *Id.*

A century ago, the Mississippi Supreme Court reasoned that "(1) [w]hen the terms of the contract are expressly broad enough to include the third party either by name [or[1]] as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the

---

[1] *Sideboard*'s obvious omission of "or" was later corrected in *Burns v. Washington Savings.*, 251 Miss. 789, 171 So. 2d 322, 325 (1965). The Mississippi Supreme Court made clear that the question is whether the contract's terms included the third party "either by *name* or as one of the *specified class*." *Id.* (emphasis in original).

said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract." *Id.* Based on Uno Mas's allegations and the contract's terms, Uno Mas fits this long-standing definition of a third-party beneficiary. *See Burns*, 171 So. 2d at 325 (applying *Sideboard*'s three-part test to evaluate an alleged third-party beneficiary claim).

First, "the terms of the contract are expressly broad enough to include" Uno Mas "as one of a *specified class*." *Sideboard*, 133 So. at 671 (emphasis added). While the warehouse contract does not name Uno Mas or any other restaurant or liquor store, it makes multiple references to a specified class—"ABC permittees." Indeed, the warehouse contract required Ruan to "guarantee next workday delivery *to permittees*." (Emphasis added.) And Ruan expressly "agree[d] that *an ABC Permittee's order* shall qualify for shipping when it includes the minimum number of cases of alcoholic beverages as set by the [MDOR]." (Emphasis added.)

These broad terms still have not stopped Ruan from painting Uno Mas as a "mere incidental beneficiary" with no enforcement rights. *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1146 (Miss. 2004). As Ruan sees it, its contract was with a public entity—the MDOR. So any public benefit from efficient warehouse operations Mississippi restaurants and liquor store owners received does not confer a right of action. *See Poindexter Park After-School Club v. Siemens Indus., Inc.*, No. 3:19-CV-474-TSL-LRA, 2020 WL 13526629, at *6 (S.D. Miss. June 2, 2020) (rejecting city residents' breach-of-contract claim based on the city's contract with a private company to upgrade the city's water and sewer system).

But Uno Mas is not bringing a class-action complaint on behalf of the alcohol-drinking public—who no doubt also felt effects from ABC's warehouse backlog. Rather, Uno Mas is suing *as an ABC permittee* on its behalf and on behalf of other ABC permittees.

Because the contract's terms list ABC permittees as a *specified class*, they are *intended beneficiaries*, and not merely incidental ones. *Sideboard*, 133 So. at 671.

Second, as an ABC permittee, Uno Mas "was evidently within the intent of the terms used." *Sideboard*, 133 So. at 671. Looking to the same contract provisions, the contract's intent was to guarantee expeditious alcohol delivery to ABC permittees. So ABC permittees are "within [the contract's] benefits." *Id.*

Third, accepting the complaint's allegations as true, the promisee—the MDOR—had "a substantial and articulate interest in the welfare of the [ABC permittees] in respect to the subject of the contract." *Sideboard*, 133 So. at 671. According to the complaint, the Legislature directed the MDOR to enter the warehouse operations contract "to address longstanding distribution problems harming [ABC] permittees." The contract itself supports that the State of Mississippi, through the MDOR, had an interest in ensuring its restaurants and liquor stores timely received alcohol for resale. And when Ruan allegedly failed to timely perform under the contract, hurting Mississippi restaurants and liquor stores, the Legislature responded. It did so by holding hearings about the delays—an obvious public display of the State's interest in its ABC permittees' welfare.

So under *Sideboard*, Uno Mas, as an ABC permittee, qualifies as a third-party beneficiary.

### ***B. This is not a permitting case.***

Still, Ruan insists neither Uno Mas nor any other ABC permittee could ever be a third-party beneficiary.

As support, Ruan focuses on one element of the hornbook test cited favorably by the Mississippi Supreme Court when discussing the third-party beneficiary rule. *Burns*, 171 So. 2d at

325 (quoting 17A C.J.S. *Contracts* § 519(4) (1963)).[2] This element requires, "[i]n order for the third person beneficiary to have a cause of action, . . . [t]here must have been a legal obligation or duty on the part of the promisee to such third person beneficiary." *Id.* (quoting 17A C.J.S. *Contracts* § 519(4) (1963)).

According to Ruan, no restaurant or liquor store has the absolute right to purchase alcohol for resale. While Mississippi law permits the MDOR to sell alcohol wholesale, it does not *mandate* the MDOR do so. For this reason, Ruan insists that Uno Mas cannot show "there [was] a legal obligation or duty on the part" of the MDOR, as promisee, to ABC permittees like Uno Mas. *Id.*

Ruan points to cases that have held an ABC permit is a privilege, not a right. *Stone v. Farish*, 23 So. 2d 911 (Miss. 1945); *Powell v. State Tax Comm'n*, 101 So. 2d 350 (1958). And it concludes that, if Uno Mas does not have a right to purchase alcohol, then the MDOR does not have a legal obligation or duty to sell alcohol. Thus, Ruan claims it has no contractual duty to any ABC permittee to timely deliver the purchased alcohol.

But Ruan's problem is that it banks on cases involving denials or revocations of ABC permits. And here, Uno Mas is not complaining that its ABC permit was revoked or denied. Because it wasn't. Nor is Ruan in any way involved or implicated in the alcohol permitting process.

Simply put, the issue here is not the right to buy alcohol from the State. It's about the right to timely *receive* the alcohol already purchased from the State.

---

[2] The Mississippi Supreme Court would go on to describe the language quoted in *Burns*—and requoted in *Hanberry Corp. v. State Building Commission*, 390 So. 2d 277, 279 (Miss. 1980)—as "outlin[ing] the elements of a successful third-party beneficiary claim." *Rein*, 865 So. 2d at 1146.

Based on the specific facts alleged, which the Court must accept as true, there is sufficient support that the MDOR undertook an obligation to fulfill ABC permittees' wholesale alcohol orders.

According to the complaint, the MDOR had in fact issued Uno Mas and potential class members ABC permits. And the MDOR had already purchased wholesale alcohol to sell to these ABC permittees. More than that, the MDOR took Uno Mas's and other permittees' wholesale alcohol orders and collected payment. The MDOR then remitted part of that payment to Ruan as its fee to fulfill those orders according to the warehouse contract's terms. But after Uno Mas paid its tab, the booze never showed up. And when the Legislature recognized those orders were not timely delivered, lawmakers held hearings to investigate why ABC permittees had not received the alcohol the State had sold them.

From these allegations, the Court finds sufficient facts plausibly support the claim that MDOR undertook some obligation to ABC permittees that completed wholesale alcohol purchases. *Burns*, 171 So. 2d at 325 (quoting 17A C.J.S. *Contracts* § 519(4) (1963)).

Further, the obligation to fulfill the already paid for alcohol orders connected the ABC permittees to the warehouse contract. *Id.* And Uno Mas's right as an ABC permittee to maintain an action on the warehouse contract springs from the terms of the contract itself—specifically, the provisions obligating Ruan to timely deliver alcohol orders *to permittees*. *Id.* Thus, Uno Mas plausibly states a breach-of-contract claim. *Id.*

### *C. Uno Mas's contract claim does not run afoul of Legislative policy.*

Even so, Ruan re-labels Uno Mas's class-action complaint as a "direct challenge to the Legislature's actions." And it suggests that, by permitting this action to proceed, this Court would be interfering with state legislative policy.

Interestingly, it appears the Legislature did anticipate an inefficient company might poorly operate ABC's warehouse, resulting in a lawsuit. So lawmakers crafted a bill directing the MDOR to enter a warehouse operations contract mandating that "[a]ny suit brought or claim made arising out of any act or omission in operations shall be made or brought against the operator and not the state." S.B. 2844, Reg. Sess., 2022 Miss. Laws, Ch. 483, § 3 (codified as Miss. Code Ann. § 67-1-205(7)(d)). And Ruan contractually agreed "to defend any suit or claim brought against the State arising out any act or omission in operations." So the Court fails to see how Uno Mas's complaint against Ruan—based on alleged operations omissions—runs afoul of legislative policy.

## II. Negligence and Gross-Negligence Claim

By contrast, the Court finds Uno Mas has not stated a plausible claim for negligence or gross negligence.

To prove a negligence claim, Uno Mas must first establish Ruan owed it a duty. *Moss Point Sch. Dist. v. Stennis*, 132 So. 3d 1047, 1050 (Miss. 2014). And this duty cannot arise solely from a contractual obligation. *Lewis v. Loftin*, No. 3:17-CV-00180-NBB-RP, 2019 WL 1867937, at *4 (N.D. Miss. Apr. 25, 2019) (citing *First Trust Nat. Ass'n v. First Nat. Bank of Com.*, 220 F.3d 331, 335 (5th Cir. 2000)). Instead, it must arise from some other source. *Id.* An act or course of conduct may constitute both a breach of contract *and* an independent tort. *Smith v. Orkin Exterminating Co., Inc.*, 791 F. Supp. 1137, 1143 (S.D. Miss. 1990). But the contract duty cannot satisfy the tort duty—instead "[t]here must be a duty of care 'fixed by law and independent of the contract.'" *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015) (quoting *Hazell Mach. Co. v. Shahan*, 249 Miss. 301, 317, 161 So. 2d 618, 624 (1964)).

The complaint asserts Ruan owed Uno Mas and other class members the "duty to operate the [ABC] warehouse in a competent, professional, and reliable manner." This duty allegedly

arises from Ruan's "sole operat[ion] of the ABC warehouse." And as Uno Mas sees it, because the law requires all ABC permittees to buy alcohol only from the ABC warehouse, Ruan owed all ABC permittees a duty of reasonable care in operating the warehouse.

This Court disagrees. And the reason it does is because Ruan's duty to operate the warehouse is a *contractual* obligation. To be sure, a duty of care may arise during the performance of the contract. *E.g.*, *Fortner v. IMS Eng'rs., Inc.*, 422 So. 3d 22, 30 (Miss. Ct. App. 2025) (recognizing the engineering company that contracted to manage a city's street-resurfacing project owed the duty Mississippi law imposed on engineers to exercise ordinary professional skill and diligence). But "not all contractual duties are duties of care." *Id.* (quoting *Clausell*, 158 So. 3d at 390).

Mississippi has long held that, if the allegedly tortious act will not give rise to a cause of action "without proof of a contract to do what has been left undone," then the action is based upon contract—not upon tort. *Hazell*, 249 Miss. at 317, 161 So.2d at 624. Here, the basis for Uno Mas's negligence complaint is Ruan's implementation of a new warehouse software system that significantly disrupted order fulfillment. But the software snafu and lack of continency plan would not support a negligence claim without proof that the MDOR's warehouse contract obligated Ruan to maintain a system and sufficient equipment to guarantee it quickly fulfilled wholesale alcohol orders. *See id.* So Uno Mas has no independent negligence-based claims.

### III. Equitable Claim

Uno Mas's final class-action claim is for unjust enrichment. This equitable claim is brought alternatively to the third-party beneficiary claim. Uno Mas alleges Ruan has been "unfairly enriched by its retention of fees for services it failed to perform." So it seeks to recoup the per-case fee the MDOR remitted to Ruan for wholesale items paid for but not timely received.

In its motion to dismiss, Ruan suggests unjust enrichment is too narrow a remedy to cover Uno Mas's allegations. Specifically, Ruan sees two problems.

### *A. Mississippi recognizes unjust enrichment as an independent cause of action.*

First, Ruan claims unjust enrichment is only a remedy, not an independent theory of recovery. So in Ruan's view, Uno Mas cannot bring an unjust enrichment claim without asserting "a viable claim for relief." But this is an incorrect view of Mississippi law.

To support its remedy-only theory, Ruan cites two Southern District of Mississippi cases, *Mosley v. Geico Insurance Co.*, No. 3:13CV161-LG-JCG, 2014 WL 7882149, at * 5 (S.D. Miss. Dec. 16, 2014), and *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007). These two cases in turn rely on the same federal opinion, *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804 (S.D. Miss. 2002).

But what Ruan and its two cited cases missed is that the very federal judge who penned *Coleman*'s declaration that "'unjust enrichment' does not describe a theory of recovery" later admitted he was wrong. *Davis v. ING Fin. Advisers, LLC*, No. 3:06-CV-34BS, 2006 WL 8454341, at 4* (S.D. Miss. Apr. 26, 2006) (abrogating *Coleman* "to the extent that it holds unjust enrichment is not a viable cause of action").

As Judge Barbour put it when correcting his past misstep—"contrary to the holding in *Coleman*, Mississippi *does* in fact recognize an independent cause of action of unjust enrichment, based not on tort principles but on the equitable theory of quasi-contract." *Id.* (emphasis added) (citing *Magnolia Fed. Sav. & Loan Assoc. v. Randal Craft Realty Co., Inc.*, 342 So. 2d 1308, 1311 (Miss. 1977); *Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 342 (Miss. 2004); *Cockerham v. Kerr-McGee Chemical Corp.*, 23 F.3d 101, 106-07 (5th Cir. 1994); *Fordice Constr. Co. v. Cent. States Dredging Co.*, 631 F. Supp. 1536, 1538 (S.D. Miss. 1986)).

And the Mississippi Supreme Court further explained, the "action for 'unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his." *Est. of Johnson v. Adkins*, 513 So 2d 922, 926 (Miss. 1987) (quoting *Magnolia Fed. Savings & Loan*, 342 So. 2d at 1311). So embedded in an unjust enrichment claim is an implied- or quasi-contract theory of recovery. *Id.*

In this diversity case, the Court must follow Mississippi law. And under Mississippi law, Uno Mas did not have to state a separate cause of action to bring an unjust enrichment claim.

### *B. Not all unjust enrichment claims require a "mistaken payment."*

Second, Ruan insists that, by definition, unjust enrichment requires a "mistaken" payment. And Uno Mas has not alleged it paid Ruan anything directly, let alone by mistake.

Ruan is correct that Mississippi law does recognize mistaken payment as a potential basis for unjust enrichment claims. *See, e.g.*, *Willis v. Rehab. Sols., PLLC*, 82 So. 3d 583, 587-88 (Miss. 2012). But mistaken payments are not the *only* possible basis for unjust-enrichment actions, nor the most popular. Instead, a more common basis for unjust-enrichment claims is the implied-promise theory. Under that theory, one should pay the person entitled thereto what is equitably and in good conscience his. *E.g.*, *Miss. State Port Auth. at Gulfport v. Yilport Holding A.S.*, 416 So. 3d 83, 96 (Miss. 2025); *Hughes v. Shipp*, 324 So. 3d 286, 291 (Miss. 2021); *Miss. Dep't of Env't Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss. 2012); *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005). Further, the Mississippi Supreme Court has cautioned that a mistaken-payment claim "is not to be confused with unjust enrichment in contract cases, which applies to situations 'where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain.'"

*Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.*, 676 So. 2d 266, 269 (Miss. 1996) (quoting *Koval v. Koval*, 576 So. 2d 134, 136 (Miss. 1991)).

Based on Uno Mas's complaint, it has pled an implied-contract unjust enrichment claim, as an alternative to the disputed third-party breach-of-contract claim. Accepting Uno Mas's allegations as true, the Courts finds the class-action complaint plausibly states a claim for unjust enrichment.[3]

## Conclusion

The Motion to Dismiss [5] is **GRANTED in part** and **DENIED in part**. The class-action complaint's claims for negligence and gross-negligence are dismissed with prejudice.

**SO ORDERED** this, the 3rd day of September, 2026.

/s/James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

[3] Federal Rule of Civil Procedure 8(a)(3) allows seeking alternative relief in the same pleading.